Fuchsberg, J.
The defendants were convicted, at an Extraordinary Special and Trial Term of the Supreme Court, of conspiracy in the fourth degree, hindering prosecution in the third degree and official misconduct. On appeal, the Appellate Division, finding that the evidence was legally insufficient, unanimously reversed, expressly stating it did so on the law and the facts, and dismissed the indictment (47 AD2d 209).
We have previously delineated the issue now before us in the course of deciding a motion made by the defendants to dismiss this appeal on the ground that our court lacks jurisdiction to entertain it. In refusing to dismiss, we said that "[although the reversals * * * are not appealable * * * the issue of the legality of the corrective action is nonetheless itself an appealable issue (CPL 450.90, subd 2, par [b]), and accordingly appeal lies on that narrow issue alone” (emphasis in the text) (36 NY2d 964, 965).
The People now take the position that, in order for us to pass on the legality of the corrective action, we must first review the underlying merits to determine whether the evidence was legally insufficient. The defendants, on the other hand, argue that, even if one were to assume that the evidence was indeed legally insufficient, we are required, because of the Appellate Division’s recital that its reversal was on the facts and the law, to determine only the legality of the corrective action.
For the reasons which follow, we hold that we cannot go behind the Appellate Division’s order and that, therefore, the dismissal of the indictment was proper.
Our analysis turns particularly on the language of CPL 450.90 (subd 2) which provides:
"An appeal to the court of appeals from an order of an intermediate appellate court reversing or modifying a judgment, sentence or order of a criminal court may be taken only if:
"(a) The intermediate appellate court’s order expressly states the determination of reversal or modification to be on the law alone; or
"(b) The appeal is based upon a contention that corrective action, as that term is defined in section 470.10, taken or *62 directed by the intermediate appellate court was illegal.” (Emphasis added.)
Manifestly, the order of the Appellate Division does not "expressly state” that the reversal here is "on the law alone” as specified by paragraph (a) of subdivision 2’s unambiguous language (cf. People v Pendleton, 35 NY2d 690; People v Williams, 31 NY2d 151, 153; People v Sullivan, 29 NY2d 937, 938).
In these circumstances, as we concluded at the time we denied the motion to dismiss, we must look to paragraph (b) of subdivision 2 as the sole source of our appellate power in the present case. That provision reasonably can be held to establish only one frame of reference for review of the "legality” of the corrective action, i.e., what the intermediate appellate court actually did, not what it might have or should have done. That is the only avenue provided for measuring the permissibleness of the corrective action. And, since the determination of the Appellate Division here is beyond our review under paragraph (a) of subdivision 2, we are confined to testing the legality of its corrective action under paragraph (b) of subdivision 2 by that determination, however we might otherwise assess the determination were we free to review it. (People v Crimmins, 36 NY2d 230, 236.) Were we to hold otherwise, we would be flying, in the face of the clear language of the statute by doing indirectly what we cannot do directly. For review of the determination would have to rest on a merger of the concepts of reversal and corrective action and thus would vitiate the undisputed rule that this court can assert jurisdiction on the merits only where the reversal below was based on a question of law alone (CPL 450.90, subd 2, par [a]).
It is also instructive to note how the present statutory pattern contrasts with that which prevailed prior to the adoption of the Criminal Procedure Law, which became effective September 1, 1971. Under its predecessor, the Code of Criminal Procedure, when an intermediate appellate court’s reversal was on the facts, a new trial resulted; under those circumstances, it had no power to dismiss the accusatory instrument (People v Klose, 18 NY2d 141, 144; People v Nappi, 18 NY2d 136, 140; People v Bellows, 281 NY 67, 75, 76; People v Peck, 205 NY 554; Cohen and Karger, Powers of the New York Court of Appeals, § 202, p 758). A dismissal by it of an indictment or information had to be based on the law *63 alone, a predicate for review by this court (People v Klose, supra; People v Bellows, supra). And, the only consequence of a recital by the intermediate appellate court that a reversal was based not on the law alone but on the facts as well then was to require, upon reversal by this court, that a new trial be granted; it did not proscribe our review of the law question (People v McCaleb, 25 NY2d 394, 404).
It was against that background that the Legislature, presumably motivated by concern over whether there was fairness in affording the People more than one opportunity to prove their case (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 470.20, pp 608-609),[1] 2in enacting the Criminal Procedure Law introduced the present requirement for dismissal of an accusatory instrument where a reversal is stated to be predicated on factual considerations (CPL 470.20, subds 2, 3, 4, 5). As already indicated, that unequivocal requirement, combined with the plain wording of CPL 450.90 (subd 2, par [a]), operates, as in the present case, to preclude this court, simply because of the wording of the order, from reaching the merits of what may be in fact purely legal questions (e.g., People v Pendleton, 35 NY2d 690, supra)[2]
Needless to say, a procedural law, adopted after careful legislative consideration of competing public policy considerations, is not to be disregarded at will simply because its impact on a particular case precludes additional appellate review after both parties have already enjoyed the advantages of a full and lengthy trial and of an equally exhaustive appeal. Absent a constitutional question, even the State’s highest court may not refuse, as the dissent would have us do, to apply the plain import, of an applicable statute, which, until and unless amended or repealed, must be respected as the law for all our people, no matter where positioned.
*64 Accordingly, since the corrective action taken by the Appellate Division is precisely that mandated for its stated determination by CPL 470.20 (subd 2), which directs that when the evidence fails to establish a prima facie case an accusatory instrument "must” be dismissed, the order so directing was legal and must be affirmed.

. Such a policy would be consonant with the one expressed by the United States Supreme Court in the following language: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty” (Green v United States, 355 US 184, 187).

. Even before the statutory change was adopted, the intended result of its language was clearly perceived and expressed by its critics. (See Association of Bar of City of NY, Committee on Criminal Courts, Law and Procedure, Special Report on Proposed Criminal Procedure Law [1969 Bill], p 54 et seq.)