Morris **FEUERSTEIN,** Petitioner,

v.

The **PEOPLE OF the State of NEW YORK,** Respondent.

No. 80 C 1395.

United States District Court,
E. D. New York.

June 3, 1981.

Lubash & Gardner, Jamaica, N. Y. by David B. Lubash, Howard J. Gardner, Jamaica, N. Y., for petitioner.

John J. Santucci, Kew Gardens, N. Y., Dist. Atty., Queens County by William Schrager, Asst. Dist. Atty., Kew Gardens, N. Y., for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner is currently serving a sentence of three and a half to ten years following his conviction of arson in Supreme Court, Queens County. Claiming that his Fifth and Fourteenth Amendments rights were violated by the admission into evidence of certain statements he made to a New York City Fire Marshal, and that his guilt was not proved beyond a reasonable doubt, petitioner has applied to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons which follow, the writ is denied.

The evidence adduced at trial revealed the following: On the evening of May 28, 1976, a serious fire occurred at petitioner's store, the Jen-West Bootery, and soon spread to several neighboring stores. Several passersby, as well as firemen who promptly arrived at the scene, placed the start of the fire at about 9:15 p. m. Expert testimony was presented to the effect that the fire could not have begun in any of the adjacent stores, and that it had in fact begun at the rear of petitioner's store. In

addition, it appeared to Fire Department arson experts that the pattern of burning, particularly the apparent spread of fire by seepage of some liquid under doors and walls, indicated that a liquid accelerant had been used to start the fire.

An employee of petitioner's testified that contrary to their usual practice of more than two years, on the evening of May 28th petitioner said that he would close up the store alone and allowed the employee to leave at about 8:55 p. m. On his way home, the employee met and chatted briefly with the owners of the adjacent jewelry store, one of whom corroborated the employee's testimony that he had left petitioner back at the store.

The assistant manager of a nearby theatre testified that as he was parking his car at about 9:00 p. m. he saw petitioner leave the Bootery and return a few minutes later carrying a shopping bag. Another witness stated that shortly after 9:00 p. m. he was passing the Bootery when he looked in and observed petitioner lifting brown cartons and throwing them about.

Petitioner had been late in making rental payments on the store's premises and owed over $1,400 in rent at the time of the fire. He had admitted to the managing agent of the owner of the premises that his business was doing poorly and that he wished to sell the business. Petitioner's insurance broker testified that the store's contents were insured for $60,000 and that he had arranged an additional amount of insurance for business interruption. The witness stated that petitioner filed a claim for the full coverage shortly after the fire.

New York City Fire Marshal Robert McCann, of the Fire Department's Major Case Unit and an expert in the field of arson, examined the burning on the premises of the nearby stores and interviewed their owners, as well as over 100 other persons who may have known about the fire. In early June, 1976, he attempted twice to contact petitioner telephonically to set up an interview as part of "standard operating procedure" following a serious fire. Unable to make telephone contact, he visited petitioner's home in mid-June and handed his wife an investigatory subpoena summoning petitioner to Fire Department offices to answer questions regarding the fire.[1]

Petitioner appeared on his own at Marshal McCann's office and was interviewed on July 7, 1976. At that time, petitioner stated to McCann that on the evening of the 28th he had left the Bootery at the same time as his employee. Petitioner also stated that on his way to his car he had encountered the owners of the jewelry store. McCann further testified that petitioner had stated that the store's contents were insured for $60,000 and that he had $25,000 in insurance for interruption of business, plus $2,000 insurance on the sign on the Bootery's exterior. McCann asked permission to visit the premises to make a physical inspection, which was arranged and occurred the next day.

Under circumstances described more fully below, McCann's testimony regarding petitioner's statements was admitted without a separate hearing into their voluntariness. Petitioner was found guilty by a jury of arson in the third degree and his conviction was affirmed by memorandum, *People v.*

---

1. The subpoena was issued pursuant to § 488(2)–2.0 of the New York City Administrative Code, which provides:

"1. A fire marshal shall have the power to issue a notice in the nature of a subpoena, in such form and subscribed in such manner as the commissioner shall prescribe, to compel the attendance of any person as a witness before him, to testify in relation to any matter enumerated in section 488(2)–1.0 of the code.

"2. Upon the presentation of satisfactory proof of due service of any such notice in the nature of a subpoena upon any such witness, and of failure to obey the same, it shall be the duty of the commissioner to make an order that such witness be arrested and brought before the marshal, to testify in relation to the subject matter of the inquiry. Such order may be executed by any member of the police force, who may arrest and bring the witness before such marshal; but such witness shall not be detained longer than is necessary to take such testimony."

*Feuerstein*, 74 A.D.2d 853, 425 N.Y.S.2d 379 (App.Div. Second Dept. 1980), and leave to appeal to the New York Court of Appeals was denied on May 12, 1980.

Petitioner's objection to the admission of the evidence of his statements really divides into two federal claims. First, there is his contention that the evidence was received without notice and a hearing, in violation of his right to procedural due process. Second, independent of due process rights, petitioner's privilege against self-incrimination under the Fifth and Fourteenth Amendments would have been violated had the statements been made involuntarily.

■ For the purposes of this petition, it is necessary to explore the circumstances under which the State trial judge concluded that petitioner was not entitled to a separate hearing on voluntariness. N.Y.Crim. Proc.L. §§ 710.40 and 255.20 provide that a motion to suppress evidence "must" be made soon after arraignment and prior to trial. Notwithstanding a failure timely to move for a suppression hearing out of the presence of the jury, if such a request is made during trial the court may, in its discretion, either interrupt trial for such a hearing, or proceed with the evidence and make a determination regarding constitutional admissibility. *People v. Lawrence*, 79 Misc.2d 872, 361 N.Y.S.2d 602 (Rensselaer County Court 1974), *aff'd mem.*, 39 N.Y.2d 956, 386 N.Y.S.2d 885, 353 N.E.2d 849 (1976). See *People v. Ganci*, 27 N.Y.2d 418, 318 N.Y.S.2d 484, 267 N.E.2d 263, *cert. denied*, 402 U.S. 924, 91 S.Ct. 1398, 28 L.Ed.2d 663 (1971).

Petitioner was indicted in August 1976, and, on November 23, 1976, claiming that he was "entitled to a hearing to suppress statements alleged to have been made by him to law enforcement officials, whether members of the police department or the fire department," Respondent's Memorandum of Law, Exh. B, at 10, he moved for discovery of all such statements. On December 16, 1976, the prosecutor provided petitioner's counsel with, *inter alia*, a full copy of the statement given to Fire Marshal McCann. During the ensuing months, petitioner failed to pursue his initial request for a suppression hearing, and trial began on May 3, 1977.

On the third day of trial, as Marshal McCann was about to relate the substance of petitioner's statements, his attorney objected to the imminent testimony on the ground that he had not had formal notice of the State's intention to use the statements. The objection was overruled after argument out of the presence of the jury.

N.Y.Crim.Proc.L. § 710.30 provides that whenever the State intends to offer at trial evidence of statements made by a defendant to a "public servant" which, "if involuntarily made would render the evidence thereof suppressible upon motion," it must serve notice of its intention to use the statements. If no notice is given, the evidence may not be used unless the defendant has moved to suppress the statement and the motion has been denied. See *People v. Briggs*, 38 N.Y.2d 319, 379 N.Y.S.2d 779, 342 N.E.2d 557 (1975).

In response to petitioner's objection to the statements evidence, the Assistant District Attorney argued that § 710.30 was satisfied when the full text of the statement had been turned over months before trial. However, the trial justice did not decide the question of the sufficiency of notice. Instead, finding that petitioner had conceded that the statements were not made while he was in custody, the trial court concluded that under the circumstances of the case the statements were not made "involuntarily" and he ruled that § 710.30 was therefore inapplicable. Accordingly, the court applied the general rule and since petitioner had not moved for a suppression hearing prior to trial, the justice declined to exercise his discretion to grant the request to delay trial for such a hearing.

■ Although petitioner argues, as he did in the State courts, that this conclusion was erroneous, it is settled that this Court may not grant habeas relief on the basis of mere State law error, but only upon a showing of error of *federal* constitutional magni-

tude. *U. S. ex rel. Stanbridge v. Zelker*, 514 F.2d 45 (2d Cir. 1975); *Schaefer v. Leone*, 443 F.2d 182 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1971). Accordingly, beyond issues of compliance with State procedural rules, the Court turns to the questions whether petitioner's Fifth and Fourteenth Amendments rights to due process and his privilege against self-incrimination were violated.[2]

■ It is clear that it is constitutional error to instruct a jury that it must first determine the voluntariness of a defendant's confession and then to disregard the confession if it is concluded that it was involuntary. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The voluntariness of a statement should be determined by the trial judge prior to its final consideration by the jury. *Ibid.* However, the Supreme Court "has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances." *Pinto v. Pierce*, 389 U.S. 31, 32, 88 S.Ct. 192, 193, 19 L.Ed.2d 31 (1967). See *Watkins v. Sowders*, —— U.S. ——, 101 S.Ct. 654, 658 & n.3, 66 L.Ed.2d 549 (1981). In this regard, the

> "presence of the jury during the voluntariness hearing, as in the instant case, does not in and of itself violate due process, particularly when the confession is proven voluntary, because the confessor is not prejudiced by the jury's presence in that circumstance. *Pinto v. Pierce* [*supra* ]."

*Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir. 1980).

In petitioner's case, as soon as it became apparent that his attorney—for the first time—was objecting to the statements evidence, and before the evidence was adduced, the trial justice had the jury removed from the courtroom while the matter was considered. The justice required the State to make an offer of proof and gave petitioner's counsel an opportunity to present his argument. The court made its "preliminary determination of voluntariness," *Watkins v. Sowders, supra,* 101 S.Ct. at 663 n.12 (Brennan, J., dissenting), as recommended in *Jackson v. Denno, supra,* and only then permitted McCann's testimony to proceed in the presence of the jury.

The record does not reflect that defense counsel's cross-examination of McCann was materially restricted or inhibited by the presence of the jury in the courtroom. Petitioner's attorney made a general objection that the justice's ruling might compel his client to testify in front of the jury, which did not ultimately occur. However, during frequent sidebar colloquies defense counsel brought to the trial court's attention no proposed testimony of petitioner that would be material to the voluntariness question, nor any specific reason why the giving of such testimony in open court would be prejudicial to the defense. Nor is any such prejudice argued on this habeas petition.

■ Following the completion of McCann's testimony regarding the statements and cross-examination, the trial court again permitted counsel to argue the question of voluntariness outside of the hearing of the jury. On the basis of this fuller record, the court again concluded that the statements were not involuntarily made. Since, as the Court's discussion below indicates, the use of petitioner's statements did not violate his federal privilege against self-incrimination, this Court is unable to conclude that he was denied due process by the procedure chosen by the trial court to determine the question of voluntariness.

Turning to the merits of the voluntariness question, the Court notes that the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

---

2. The State argues that petitioner waived his right to a hearing under State law and that this Court is thereby barred under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), from hearing his claims. However, since the trial court apparently based its decision to deny a separate hearing on its conclusion on the merits of the voluntariness question rather than on a procedural default, we prefer not to decide this petition on the basis of a waiver that would preclude addressing the merits of petitioner's claims. See *Ulster County Court v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

694 (1966), was based upon the assumption that

> "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467, 86 S.Ct. at 1624.

The Court specifically defined "custodial interrogation" for these purposes as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. On several occasions since, the Supreme Court has reiterated that these safeguards are required only in custodial situations where the voluntariness of confessions or statements is inherently suspect. See *Oregon v. Mathiason*, 429 U.S. 492, 494–96, 97 S.Ct. 711, 713–714, 50 L.Ed.2d 714 (1977); *Beckwith v. United States*, 425 U.S. 341, 345–47, 96 S.Ct. 1612, 1615–1616, 48 L.Ed.2d 1 (1976); *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). Indeed,

> "a non-custodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon v. Mathiason, supra*, 429 U.S. at 495, 97 S.Ct. at 714.

In carefully circumscribed dicta, the Supreme Court has recognized

> "that non-custodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where 'the behavior of ... law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined....' *Rogers v. Richmond*, 365 U.S. 534, 544, [81 S.Ct. 735, 741, 5 L.Ed.2d 760] ... (1961)." *Beckwith v. United States, supra*, 425 U.S. at 347–48, 96 S.Ct. at 1616–1617.

In such circumstances, however, the Supreme Court has "reaffirmed the need for showing overbearing compulsion as a prerequisite to a Fifth Amendment violation." *United States v. Washington*, 431 U.S. 181, 190, 97 S.Ct. 1814, 1820, 52 L.Ed.2d 238 (1977). See *Beckwith v. United States, supra*, 425 U.S. at 347–48, 96 S.Ct. at 1616–1617 (showing of "coercion" required); *Michigan v. Tucker*, 417 U.S. 433, 440, 94 S.Ct. 2357, 2361, 41 L.Ed.2d 182 (1974) ("genuine compulsion of testimony"). When such a claim is raised, a reviewing court should "examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Beckwith v. United States, supra*, quoting *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764–1765, 16 L.Ed.2d 895 (1966).

■ With these principles in mind, and upon an independent review of the record, the Court concludes that petitioner's statements were not made while in custody and were not the product of compulsion or coercion sufficient to constitute a violation of his Fifth and Fourteenth Amendments rights.

■ Petitioner claims that in view of the Fire Marshal's subpoena his statements cannot be deemed to have been made voluntarily. However, compliance with a citizen's duty to respond to subpoenas issued as part of "official investigations," without more, falls far short of the actual coercion required for a Fifth Amendment violation.[3]

---

**3.** Petitioner contends that § 488(2)–2.0 of the Administrative Code, empowering fire mar-

shals to issue investigatory subpoenas, is unconstitutional. Although petitioner's attorney

See *United States v. Mandujano,* 425 U.S. 564, 579–80, 96 S.Ct. 1768, 1777–1778, 48 L.Ed.2d 212 (1980). See also *United States v. Kampiles,* 609 F.2d 1233, 1241–42 (7th Cir. 1979), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *United States v. Micieli,* 594 F.2d 102 (5th Cir. 1979).

Like the defendant in *Oregon v. Mathiason, supra,* the record shows that petitioner went on his own to Fire Department offices and was interviewed in McCann's own office. *Cf. Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (defendant brought to station in police car and questioned in interrogation room). Although petitioner claims that the subpoena threatened him with arrest for non-compliance, Marshal McCann testified that had petitioner not showed up for the interview he would, in the first instance, merely have telephoned petitioner. *Cf. Dunaway v. New York, supra* (defendant found to have been "seized" where, although he did not attempt to leave, he would have been physically restrained had he done so). See *United States v. Micieli, supra* (relevance of subjective intentions of law enforcement officers with regard to liberty of suspect).

The record contains no suggestion that petitioner's questioning was anything but routine at the time when he made the statements. Marshal McCann testified that as a matter of standard operating procedure he had interviewed each of several storeowners who had had their property damaged by the fire. Indeed, well over 100 persons were questioned in the hope of gathering information regarding this serious fire. Moreover, even if petitioner had become the "focus" of the investigation and had been so advised, that circumstance alone would be

insufficient to convert his statements into constitutionally compelled testimony. *Beckwith v. United States, supra.* Finally, it would be difficult to deem petitioner's statements a "confession" and, as the trial court noted, may even have been considered by the jury as exculpatory.

The overall tone of the investigation with regard to petitioner at this stage reflects a cooperative atmosphere free of improper pressures. The interview was not lengthy and at its end McCann requested permission to visit petitioner's store to examine the burning on the premises. Petitioner assented and a mutually agreeable time the next day was set. At that time, the two met and petitioner freely handed McCann the keys to the store, stating that he did not want to stay. McCann responded that he would prefer that the two go through the premises together. When petitioner stated that he did not feel well and insisted upon leaving, McCann did not prevent him and proceeded to examine the store alone. In view of all the facts in the record, petitioner's claim that he was intimidated by the Fire Marshal's subpoena has the hollow ring of insubstantiation. The Court concludes that petitioner's statements were voluntarily made and properly admitted under the Fifth and Fourteenth Amendments.

Turning to petitioner's claim that he was not proved guilty beyond a reasonable doubt, while such an allegation states a habeas claim under the case of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we are guided by the most recent observation of the Court of Appeals for this Circuit that

"regarding the constitutionally required quantum of proof for criminal convictions, the standard enunciated in *Jackson*

---

did make this argument—for the first time—to the New York Court of Appeals on his application for leave to appeal, it was presented in terms of *State* law. Since petitioner failed to present his claim in the first instance to the State courts in *federal* constitutional terms—and, moreover, on this petition he does not go beyond the authorities cited to the New York Court of Appeals—this claim cannot be considered exhausted for purposes of federal habe-

as review. *Johnson v. Metz,* 609 F.2d 1052 (2d Cir. 1979). In any event, in view of the carefully limited sanction in the statute for non-compliance with a fire marshal's subpoena, and cognizant of the State's legitimate interest in investigating the causes of serious fires, this Court would find it difficult to accept petitioner's contention that § 488(2)–2.0 is unconstitutionally "vague."

remains a difficult one for petitioners to meet." *Gruttola v. Hammock*, 639 F.2d 922, 927 (2d Cir. 1981).

As stated by the Supreme Court,

"the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original).

Under this standard, petitioner is not entitled to habeas relief.

■ Reviewing the evidence in the light most favorable to the prosecution, there was substantial—if not devastating—eyewitness testimony placing petitioner—alone—at the scene of the fire immediately prior to its start. Expert testimony strongly indicated that the fire was of incendiary origin. In addition, the evidence impressively established petitioner as the person with both the opportunity and a clear motive to commit arson at the Jen-West Bootery. It is true, as petitioner contends, that the prosecution's case relied in part upon circumstantial evidence. However, on a habeas petition making this claim, this Court must give

"full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts." *Jackson v. Virginia, supra*, 442 U.S. at 319, 99 S.Ct. at 2789.

This Court may not disturb the jury's decision to believe the State's version of events rather than petitioner's and to draw inferences firmly supported by direct evidence in the record. In the light of the impressive case presented by the prosecution, the Court "cannot say that no rational jury could have found guilt beyond a reasonable doubt." *Gruttola v. Hammock, supra.*

Accordingly, the application for a writ of habeas corpus is denied.

SO ORDERED.