Richard PAYNE, Petitioner,

v.

Everett JONES, Superintendent of the Great Meadow Correctional Facility; and Robert Abrams, Attorney General of the State of New York, Respondents.

Nos. 84 CV 4275, 84 CV 1803.

United States District Court,
E.D. New York.

June 9, 1986.

Bernard F. Ferrera, Kew Gardens, N.Y., for petitioner.

John J. Santucci, Dist. Atty., Queens Co. by Steven J. Rappaport, Jeanette Lifschitz, Asst. Dist. Attys., Kew Gardens, N.Y., for respondents.

PLATT, District Judge.

Petitioner, Richard Payne, was convicted on February 11, 1981, in New York Supreme Court, Queens County, of Arson in the Second Degree and Conspiracy in the Fourth Degree. His conviction was affirmed by the Appellate Division of the Supreme Court, Second Department, in an opinion reported in *People v. Donnelly*, 89 A.D.2d 872 and 453 N.Y.S.2d 235. Leave to appeal to the Court of Appeals was denied. In a previous decision by this Court, 84 CV 1803, dated August 6, 1984, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was denied on the ground that it contained both exhausted and unexhausted claims. Petitioner chose not to appeal that decision but instead submitted a new application for a writ of habeas corpus which deleted the unexhausted claims. The respondents have relied on their papers filed in 84 CV 1803, which already addressed all of the points raised in petitioner's new petition.

In this application four grounds are raised by the petitioner in seeking the writ: (i) that there was insufficient evidence to sustain petitioner's conviction; (ii) that it was prosecutorial misconduct to have described the expected testimony of a witness, Louisa Gomez, in an opening statement when the prosecutor knew that said witness would later refuse to testify; (iii) that the prosecutor suppressed exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (iv) that the sentence imposed on the petitioner was unduly harsh and excessive.

## I. *Sufficiency of the Evidence*

### A. *Factual Background*

Petitioner's trial at the State level was a fairly complex one and the record filed with this Court is substantial. In reviewing the record for sufficiency, a federal court in an application for habeas corpus is guided by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* requires that the evidence be viewed in the light most favorable to the prosecution and also that:

> a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and *must defer to that resolution.*

*Jackson* at 326, 99 S.Ct. at 2793 (emphasis added).

With the above standard in mind, the facts of the case are as follows:

This case is actually the story of a neighborhood, *i.e.*, Far Rockaway, Queens. Like many other parts of Metropolitan New York, Far Rockaway has been and still is apparently an area in flux. During the 1970's the racial and ethnic composition of Far Rockaway was in transition. There was testimony in the petitioner's trial which highlighted the racial animosity and tensions which existed in the area. It is against this background that the case focuses on a Jewish congregation in Far Rockaway, Temple Kneseth Israel.

The worshippers at the Temple were experiencing problems. The President of the Temple, Mordy Sohn, testified to acts of desecration being committed against the synagogue and the harassment of members of the congregation. It was perceived by some in the congregation that these problems emanated from 750 Empire Avenue, a medium-sized apartment building located directly across the street from the synagogue building. Members of the Temple felt that the tenants of 750 Empire Avenue were the perpetrators of many of the allegedly anti-semitic incidents.

In November of 1978, Temple Kneseth Israel purchased 750 Empire Avenue and set up a corporation, Golem Realty, to shield it from liability in the purchase and management of the building. At the time of purchase many of the apartments in the building were vacant. There is some dispute as to the physical condition of the building at the time of purchase but it is clear that the building was at least habita-

ble when purchased and that it deteriorated subsequent to the purchase by Kneseth Israel.

Although the defense claims that the original purpose in the purchase of the building was to rehabilitate it, the Court, as did the jury below, accepts the prosecution's theory that the intention was to force the remaining tenants out of the building and then have it demolished, thereby removing the source of the congregation's problems. To this end, Joseph Bald, a codefendant of the petitioner and a member of the congregation, recruited various individuals to drive the tenants out through intimidation, declining building services and arson.

Alvin Donnelly and James Blackwell were hired by Bald to "manage" 750 Empire Avenue. Several tenants testified as to the non-existent services provided by these two co-defendants and to the outright threats, on at least one occasion, of Donnelly. Petitioner Payne's role in this scheme was to set fires to drive the tenants out of the building. It is undisputed that a series of suspicious fires occurred at 750 Empire Avenue subsequent to the purchase of the building by the congregation. Payne was convicted of the arson that occurred on March 7, 1979, as well as the conspiracy to commit arson. The criminal scheme of the defendants was successful in that all of the tenants left 750 Empire Avenue and the structure was demolished in September of 1979.

### B. *Application of the Law*

■ As mentioned previously, claims in habeas corpus applications of a constitutional deficiency in the evidence are judged by the Supreme Court's decision in *Jackson v. Virginia, supra.* The test promulgated by *Jackson* for a federal habeas corpus court to follow is:

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson* at 319, 99 S.Ct. at 2789.

The Court is to look to State law for the elements of the crime in question. *Jackson* at 325 n. 16, 99 S.Ct. at 2792 n. 16. The standard by which the evidence is viewed is the federal constitutional one outlined above; however, the decision of the State appellate court is entitled to great weight if the proper standard was invoked. *Jackson* at 322 n. 15, 99 S.Ct. at 2792 n. 16. Under the law of New York a conviction obtained on the basis of circumstantial evidence, as was the case here, will only be upheld if the evidence excludes to a moral certainty all reasonable hypotheses of innocence. *People v. Montanez,* 41 N.Y.2d 53, 57, 390 N.Y.S.2d 861, 359 N.E.2d 371 (1976); *People v. Mackell,* 47 A.D.2d 209, 366 N.Y.S.2d 173, *aff'd,* 40 N.Y.2d 59, 386 N.Y.S.2d 37, 351 N.E.2d 684 (1976); *People v. Benzinger,* 36 N.Y.2d 29, 364 N.Y.S.2d 855, 324 N.E.2d 334 (1974). The Supreme Court has explicitly held that this stricter standard does not require a federal habeas corpus court to reverse a conviction when the lesser federal standard has been met. *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793. It follows, therefore, that the finding of a New York appellate court in this case that there was legally sufficient evidence under the stricter New York standard is entitled to great deference in a federal court, which applies a more lenient standard for the evidence to satisfy.

■ The Second Circuit has noted that the *Jackson* standard places a very heavy burden on a petitioner claiming insufficiency of the evidence. *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984). Conspiracy convictions may be proved by circumstantial evidence. *United States v. Torres,* 740 F.2d 122, 125 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2117, 85 L.Ed.2d 482 (1985); *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). The evidence is to be viewed as a whole, not in bits and pieces. *United States v. Brown,* 776 F.2d

397, 403 (2d Cir.1985). The credibility of witnesses is not to be redetermined by a federal court when considering a habeas corpus petition. *Schreiber v. Salamack,* 619 F.Supp. 1433, 1435 (S.D.N.Y.1985). Finally, the fact that the evidence may be conflicting does not require the granting of a petition for habeas corpus. *Anderson v. Fuller,* 455 U.S. 1028, 1030–31, 102 S.Ct. 1734, 1735–36, 72 L.Ed.2d 150 (1982) (Burger, Chief Justice, dissenting from denial of certiorari); *McShall v. Henderson,* 526 F.Supp. 158, 161 (S.D.N.Y.1981).

■ The petitioner maintains that there was insufficient evidence connecting him to the conspiracy in this case and that all of the elements of Arson in the Second Degree were not proved beyond a reasonable doubt. Arson in the Second Degree is defined at New York Penal Law § 150.15.[1] This section should be read in conjunction with § 150.10,[2] which defines Arson in the Third Degree, a crime which contains the basic elements of arson less the aggravating factor of the presence of people found in Arson in the Second Degree. Arson in the Second Degree, therefore, has five elements:

(1) the defendant must intentionally start a fire;

(2) there must be an intent to damage the building;

(3) there must be damage to the building;

(4) a person other than the arsonist must be present in the building at the time of the fire; and

(5) the defendant must know of the presence of persons in the building or the circumstances are such as to render the presence of such a person in the building a reasonable possibility.

It was more than reasonable for a jury to find the presence of all five elements from the facts in this case. There were many people in 750 Empire Avenue at the time of the March 7, 1979 fire. Petitioner's own memorandum of law describes how several tenants had to be evacuated from the building into the street on that day. Petitioner's Mem. of Law at 21. The fourth element of Arson in the Second Degree was thus satisfied. The fact that 750 Empire Avenue was an apartment building is sufficient to satisfy the fifth element: circumstances being such as to render the presence of people in the building a reasonable possibility. Indeed, petitioner claims he was a tenant of the building. Petitioner's Mem. of Law at 21–22.

Petitioner contends that the third element of arson was not proven beyond a reasonable doubt. Specifically, petitioner asserts that there was no "damage" to the building from the March 7th fire as required by the statute in that there was no "injury that lowered the value of the building or that impaired its usefulness." The

---

1. Section 150.15 provides:
   § 150.15 Arson in the second degree
   A person is guilty of arson in the second degree when he intentionally damages a building or motor vehicle by starting a fire, and when (a) another person who is not a participant in the crime is present in such building or motor vehicle at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility.
   Arson in the second degree is a class B felony.
   This section was amended in 1979, adding the words "or motor vehicle" but otherwise is the same as when the petitioner was convicted.

2. Section 150.10 provides:
   § 150.10 Arson in the third degree
   1. A person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion.
   2. In any prosecution under this section, it is an affirmative defense that (a) no person other than the defendant had a possessory or proprietary interest in the building or motor vehicle, or if other persons had such interests, all of them consented to the defendant's conduct, and (b) the defendant's sole intent was to destroy or damage the building or motor vehicle for a lawful and proper purpose, and (c) the defendant had no reasonable ground to believe that his conduct might endanger the life or safety of another person or damage another building or motor vehicle.
   Arson in the third degree is a class C felony. This section was amended in 1979, adding the words "or motor vehicle" but otherwise is the same as when the petitioner was convicted.

testimony of Lieutenant Kenneth Grabowski of the New York City Fire Department shows that this contention is without merit.

Lieutenant Grabowski was formerly a New York City Fire Marshal and investigated the March 7, 1979 fire at 750 Empire Avenue. Grabowski found that the fire originated in the entrance of apartment 1L. He noticed that it had charred the linoleum floor. Firefighters found five plastic containers which smelled of gasoline. So much gasoline was spread over the apartment floor that it had to be covered by foam. Record at 1296. In Grabowski's opinion the fire was non-accidental and non-natural and that it was started with newspapers. Record at 1298–99. Grabowski's testimony was more than a sufficient basis for the jury to conclude that the damage element of arson was satisfied. The jury could also reasonably infer from Grabowski's testimony that the fire was intentionally started and that there was an intent to damage the building.

■ Of course there must be some evidence to tie the petitioner to the intentionally set fire of March 7, 1979 in order to complete the elements for arson. In this respect it should be noted that it is not necessary to have direct evidence of the petitioner setting the fire in question. Much like conspiracy, arson is a secretive crime that may be proved by circumstantial evidence. Indeed, circumstantial evidence is as persuasive as direct evidence and may be indispensable to prove the existence of a deliberate intent formed in the mind. *Mallette v. Scully*, 752 F.2d 26, 32 (2d Cir. 1984).

■ There was significant evidence in the record tying petitioner to the conspiracy to commit arson and the arson of March 7th. To begin, there is a taped conversation between co-defendant Joseph Bald and an informant, Luis Ayala, in which Bald solicits Ayala to do a "plumbing job" at 750 Empire Avenue in exchange for cash, airplane tickets and furniture. An expert witness testified that "plumbing job" meant arson and Ayala testified that Joseph Bald gave him money to purchase

kerosene in order to start a fire at 750 Empire Avenue. Record at 1382.

Petitioner contends that the taped conversation between Joseph Bald and Luis Ayala is not admissible against him because it occurred "many weeks before it is alleged that the conspiracy even began." Petitioner's Mem. of Law at 26. The indictment in the conspiracy count charges that the defendants acted in concert "*on or about* and between January 2, 1979 and March 7, 1979...." Record at A10 (emphasis added). The conversation in question happened on December 18, 1978, a scant two weeks before January 2, 1979. The indictment by its terms does not set a fixed starting date of January 2, 1979 for the conspiracy but alleges it began about that time. It is not unreasonable to include a period just two weeks before January 2nd in the conspiracy. The proposition that the out-of-court declarations of co-conspirators made in the course of and in furtherance of the conspiracy are admissible against all the conspirators hardly needs citation. *United States v. Barnes*, 604 F.2d 121, 156 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

■ There was also testimony from a tenant of 750 Empire Avenue, one Carol Ganeles, which described an incident in which the petitioner demanded that Ms. Ganeles' father sign a form in exchange for a thousand dollars. Ms. Ganeles testified that the petitioner attempted to force his way into the apartment and only left when her brother threatened to call the police. Record at 562–63. Although the petitioner describes this incident as relatively meaningless and non-probative, Petitioner's Mem. of Law at 19–20, it is reasonable to draw the inference that this was harassment on the part of petitioner and part of the scheme to drive out the tenants of 750 Empire Avenue. As already mentioned, *Jackson* requires a federal habeas corpus court to defer to inferences favorable to the prosecution. This Court may not substitute its view of the evidence for that of the jury.

The most damaging evidence against the petitioner was the testimony of Detective Samuel Gibson. Detective Gibson responded to the fire on March 7, 1979. He encountered the petitioner in front of the building. Petitioner falsely identified himself as Bruce Cooper and told Detective Gibson that he had observed a black male running from the building at the time of the fire and that this man had bumped into him but he did not see the man's face. Record at 1121.

▮▮▮ Petitioner contends that his conduct before Detective Gibson was totally innocuous. He makes the incredible argument that Detective Gibson's testimony does not place him at the scene of the arson. Petitioner's assertion that the scene of the arson must be restricted to the apartment where the fire was extinguished goes against common sense. Petitioner further argues that his giving the false identification of Bruce Cooper does not evince a consciousness of guilt because he had previously used that name with the tenants of 750 Empire Avenue. The simple response to this argument is that a reasonable inference can be drawn that a person planning a crime might begin to use an alias prior to it as preparation for covering up the crime after its commission. Petitioner also contends that the prosecution did not disprove the truth of his statement to Detective Gibson and that the statement is consistent with a theory of innocence. However, it is entirely reasonable to draw the inference that petitioner was attempting to deflect guilt by this statement. A statement made to escape the imputation of guilt is evidence of the crime in question or at least consciousness of guilt. *Mallette v. Scully*, 752 F.2d at 32.

▮▮▮ The evidence here was constitutionally sufficient to support a conviction for arson. Expert testimony showed that the fire was non-accidental. Petitioner was placed at the scene of the fire by Detective Gibson. The petitioner had a motive and intent to commit the crime in that it could reasonably be inferred that he was a member of Joseph Bald's ring, hired to use whatever methods were necessary to drive the tenants out of 750 Empire Avenue. Though the evidence is circumstantial, taken together it satisfies the *Jackson* standard. *See Feuerstein v. People of New York*, 515 F.Supp. 573, 580 (E.D.N.Y.1981) (placing petitioner at scene of fire along with motive and opportunity sufficient to uphold arson conviction).

▮▮▮ From the evidence described the jury could also reasonably infer the existence of a conspiracy to commit arson and petitioner's membership in it. Petitioner's application for a writ of habeas corpus on the ground of constitutionally insufficient evidence is without merit and must be denied.

## II. *Prosecutorial Misconduct*

▮▮▮ In his opening statement, the prosecutor at petitioner's trial made extensive references to the expected testimony of Louisa Gomez. Ms. Gomez had been granted immunity and according to the opening statement would have directly implicated the petitioner in the arson and conspiracy. However, when called to testify, Ms. Gomez refused to answer any questions despite her legal obligation to do so.

Petitioner claims that the prosecutor knew in advance of trial or had reasonable cause to believe that Ms. Gomez would not testify. He claims that the prosecutor acted in bad faith in violation of his constitutional rights. Even absent bad faith the petitioner claims that the incident involving Ms. Gomez and the prosecutor's opening statement so tainted the trial with prejudice that the trial judge's curative instructions were not sufficient to guarantee a fair trial.

It is clear from the record that the prosecutor had a good faith basis to believe that Ms. Gomez would testify. Ms. Gomez's own attorney admitted that she had told him she would not make up her mind whether to testify until she took the witness stand. Record at 836. The prosecutor asked Ms. Gomez with her attorney present whether, if she testified, it would

be truthful. Upon her refusal to testify the trial judge held her in contempt and ordered the district attorney to file an information against her. Every effort was made to limit any prejudicial effect of Ms. Gomez's refusal to testify. Ms. Gomez was asked just one question: whether she recalled testifying before a grand jury. When she refused to answer, the jury was immediately excused. Record at 815. After an extensive colloquy with the lawyers the judge brought the jury back and instructed as follows:

> Members of the jury, in your absence Mr. Maddalone has withdrawn the last witness at this time as a witness, and I will instruct you at this time that don't speculate or guess as to why she did not testify and why Mr. Maddalone has withdrawn her as a witness. It is not evidence in the case, and the only evidence in the case is the testimony you will hear in this courtroom and any other exhibits which are received in evidence....

Record at 859–60.

The trial court gave further curative instructions in the jury charge. Also of note is the fact that petitioner's own trial counsel attempted to take advantage of Ms. Gomez's refusal to testify in his closing arguments. Indeed, Ms. Gomez's refusal to testify may well have redounded more to petitioner's benefit than to the benefit of the prosecutor, who obviously overpromised his case. The Court is satisfied that the trial court handled this matter properly and that no error of constitutional magnitude occurred. In *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the Supreme Court found no basis on which to grant habeas corpus relief in a case where the petitioner advanced a similar claim. Accordingly, petitioner's application for a writ of habeas corpus must be and hereby is denied on this ground.

### III. *Suppression of Brady Material*

▪ Petitioner claims that the prosecutor suppressed exculpatory materials prior to trial in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1983). The materials in question are a set of racist and anti-semitic fliers which had been circulated in the Far Rockaway neighborhood. Petitioner claims that had these been disclosed prior to trial they would have given defense counsel an investigative lead as to others who might have perpetrated the arson here.

This claim is without merit. The materials were in fact admitted into evidence towards the end of the trial and thus had been considered by the jury, who by their guilty verdict obviously found them nonprobative.

In this case the petitioner only made a general request for *Brady* materials. Under *United States v. Bagley*, —— U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the petitioner must show the existence of a reasonable probability that the result of the trial would have been different had the materials been disclosed. The petitioner here has not met this heavy burden. Furthermore, the Court does not believe that these fliers were either exculpatory or material to guilt or punishment. Petitioner has shown no prejudice by his failure to receive these materials prior to trial. Petitioner's application for a writ of habeas corpus must therefore be and hereby is denied on this ground.

### IV. *Excessive Sentence*

▪ Petitioner's last claim is that the sentence imposed upon him, 8–⅓ to 25 years, which was the maximum term possible, was unduly harsh and excessive in violation of the Eighth Amendment. The Court sees no constitutional violation here. The sentence imposed was well within the discretion of the sentencing judge given the seriousness of the crimes for which the petitioner was convicted. This claim of the petitioner affords no basis on which to grant a writ of habeas corpus.

### CONCLUSION

All four of the petitioner's claims are without merit. Accordingly, the petition-

er's application for a writ of habeas corpus is denied.

SO ORDERED.