**UNITED STATES of America,
Appellee,**

v.

**Robert WILNER et al.,
Defendants-Appellants.**

**UNITED STATES of America,
Appellee,**

v.

**Dominic MECCA, Defendant-Appellant.**

**Nos. 561, 814, 815, and 983, Dockets
74–1955, 74–2534, 74–2549,
and 74–2607.**

United States Court of Appeals,
Second Circuit.

Argued May 5, 1975.

Decided Sept. 10, 1975.

Gerald L. Shargel, New York City (La-Rossa, Shargel & Fischetti and James M. LaRossa, New York City, of counsel), for appellant Wilner.

E. Thomas Boyle, New York City (William J. Gallagher, and The Legal Aid Society, New York City, of counsel), for appellant Belanger.

Thomas J. O'Brien, New York City, for appellant Vissa.

Samuel Boxer, White Plains, N. Y., for appellant Mecca.

Daniel J. Pykett, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. S. D. N. Y. and Lawrence S. Feld, Asst. U. S. Atty., of counsel), for appellee.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

These are appeals from convictions, following separate trials, for conspiracy to distribute and possess with intent to distribute controlled substances and for possession with intent to distribute approximately 500 pounds of marijuana in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 846.

Since a resume of the facts upon which the convictions were based reads somewhat like the scenario of an adventure movie, it may appropriately be begun with the following listing of the cast of characters:

Air Seas Charter, Inc.: a corporation ostensibly formed to conduct chartered fishing excursions in Miami, Florida;

Robert Wilner: president of Air Seas Charter, Inc. and an amateur pilot;

Richard Belanger: secretary of Air Seas Charter, Inc.;

Dominic Mecca: another officer of Air Seas Charter, Inc.;

Robert Vissa: a friend of Mecca and the owner of a sailing sloop located in Maine;

Richard Palmer: airplane pilot, flight instructor and part-time government informer whose case was severed after indictment and who testified as a government witness;

Richard Thurlow: a licensed fishing boat captain and a government witness who was not indicted;

Stephan Smith: a boat mechanic and friend of Thurlow who was acquitted;

James Adams: a dealer and processor of marijuana and hashish at Runaway Bay, Jamaica, and a fugitive from justice at the time of trial;

Gerald Mitchell: a drug courier, government informer and witness who was not indicted;

Anthony Coviello: a drug courier not arrested at time of trial;

Gary Stephan, Paul Stephan and Nicholas Calabro: alleged conspirators who were acquitted.

In August of 1971, appellant Mecca and Paul Stephan chartered a fishing boat in Miami and smuggled 600 pounds of marijuana into the United States from Montego Bay, Jamaica. Richard Thurlow was the mate on this boat. The trip was financially rewarding.

The following year, Mecca decided to become more directly involved in the "fishing" business. Together with appellants Wilner and Belanger,[1] he incorporated Air Seas Charter, Inc., which purchased several boats, one of which was a 49 foot "Cigarette" ocean racing boat. Thurlow and Smith became employees of Air Seas Charter, Inc.

The cost of these boats, plus other "fishing" equipment, such as an airplane specially equipped with long-range fuel tanks, made another trip to Jamaica financially imperative. Thurlow introduced Belanger to Adams as a possible marijuana supply source, and Wilner, Mecca and Belanger agreed to enter into a profit sharing arrangement with Adams for the importation of this drug.

Wilner recruited Palmer, his flight instructor, and these two, with the help of Belanger and Mecca, searched for and found a deserted island in the Bahamas called Williams Island which contained a landing strip and could be used as a drop spot. Belanger, Mecca and Wilner also visited Adams' processing plant at Runaway Bay where they sampled his wares, and Belanger and Mecca located a suitable landing area in the vicinity where their plane could be loaded without attracting the attention of the authorities.

By March of 1973 all was in readiness, and Wilner and Palmer flew to Runaway Bay, where, with the assistance of Mecca and Belanger, they loaded their plane with approximately 600 pounds of marijuana. They then flew the marijuana to Williams Island and left it stashed under a tarpaulin. Following the plane's return to Miami, Thurlow and Smith left by boat to pick up the waiting cargo.

Unfortunately for them, the cargo was not waiting alone. United States and Bahamian officials, acting on a tip from Palmer, and armed, among other things, with a video tape camera, were also present. Thurlow and Smith were arrested and were subsequently tried and convicted in the Bahamas.

Undaunted by this setback, Belanger and Mecca met with Mitchell to discuss arrangements for another trip. Mitchell was dispatched to Southwest Harbor, Maine, to help Vissa prepare the sloop *Good News* for a voyage to Jamaica in June 1973, the purpose being to smuggle marijuana into Maine. To help defray the cost of this venture, another flight from Miami to Jamaica was made in May.

On this occasion, Palmer and Vissa flew to Jamaica where they were met by Mecca, and approximately 500 pounds of marijuana were loaded on the plane. Wisely avoiding their "deserted" island, they dropped the marijuana into the ocean near a waiting boat which brought it into Miami. Two automobiles driven by Coviello and Mitchell then transported the drug to the Rye Hilton Hotel in Port Chester, N. Y., where Mecca and Wilner were waiting. It was then taken to Vissa's home where it was weighed and packaged.

Another trip, using the same modus operandi, was made in June 1973. This time, two planes transported the marijuana to a waiting boat. Wilner and Mitchell were in one plane and Palmer and Vissa in the other. Coviello and Gary Stephan apparently operated the boat. Calabro and Mitchell drove the smuggled goods north. Mitchell was stopped en route by a New Jersey State Trooper and arrested upon discovery of the marijuana.

1. Wilner and Belanger were residents of New York. Mecca lived in Connecticut.

A last trip was made in August 1973. This one involved only Palmer and Mecca and a rented airplane, the association of the defendants apparently having been dissolved.

Appellants Wilner, Belanger and Vissa were tried together before Judge Lasker and a jury in May of 1974. Appellant Mecca, whose case was severed, was tried before the same judge in September of that year. All were convicted on both counts. Because of the separate trials, the appeals herein do not allege the same errors.

## THE FIRST TRIAL

The indictment, filed on December 7, 1973, contained two counts, the first alleging a conspiracy to distribute and possess with intent to distribute controlled substances running from August 1, 1971 to the date of indictment and the second alleging a substantive count of possession with intent to distribute approximately 500 pounds of marijuana in May 1973.

At the conclusion of the proof, as outlined above, Judge Lasker concluded that the evidence relating to the August 1971 and August 1973 junkets to Jamaica was insufficient to submit to the jury as part of the conspiracy alleged in the indictment, struck the testimony concerning these junkets, and instructed the jury to disregard it. He also instructed the jury that overt act # 1 relating to the August 1971 incident was stricken from the indictment. The overt act thus stricken simply charged that Mecca and Thurlow both went to Montego Bay, Jamaica, West Indies by boat.

■ Appellants contend that these acts of the trial judge constituted an amendment of the indictment and were thus improper under *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). We disagree. In *United States v. Colasurdo,* 453 F.2d 585 (2d Cir. 1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), we held that the elimination of a portion of the proof offered under a conspiracy count which

narrowed rather than broadened the reach of the count was not improper. In so holding, we relied upon *Salinger v. United States,* 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398 (1926) and a number of cases which followed in its wake.

We are not impressed by appellants' contention that the elimination of this irrelevant testimony weakened their argument, based on *Kotteakos v. United States,* 328 U.S. 750 (1946), that they were being tried for multiple conspiracies rather than the single one with which they were charged. What the District Court did, in fact, was to eliminate testimony which, as a matter of law, was not relevant to or probative of the single conspiracy charged. *Cf. United States v. Cirami,* 510 F.2d 69 (2d Cir. 1975). He then permitted the jury to determine the conspiracy issue on the basis of proper and relevant proof.

■ We do not approve of the procedure followed by the District Court in physically deleting the allegations relating to the August 1971 overt acts. We are informed that this was accomplished by making a photostatic copy of the indictment with the deleted portion covered over. As we pointed out in *United States v. Cirami, supra,* "The preferable course is to prepare a retyped 'clean' version of the indictment, omitting the language to be disregarded without any indication of its omission". However, since Judge Lasker had already advised the jury that he was physically deleting a portion of the indictment and only 23 words were actually deleted, we see no prejudicial error.

■ As is often the case in conspiracy trials, the Government did not prove that each defendant was directly involved in all the substantive acts which resulted from the conspiracy. Thus, there is no proof in the instant case that Belanger participated in the May 1973 smuggling operation which is the basis for Count II of the indictment. The Government relies on the theory enunciated in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489

(1945), that where there is a continuing conspiracy which contemplates and encompasses the illegal act performed, each conspirator is responsible for the acts of his co-conspirators. Belanger, conceding the existence of this general rule, argues that it is not applicable here because, he claims, the conspiracy in which he participated was limited to the March 1973 operation.

Judge Lasker carefully and correctly charged the jury that if they found a conspiracy to exist, they must determine in the case of each defendant whether he "became a member, whether he participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objectives". He also told them that this determination must be made on the basis of such defendant's "own actions, his own conduct, his own statements and declarations, his own connection with the acts and conduct of the other alleged co-conspirators".

The Government built its conspiracy case around Air Seas Charter, Inc. It contended, and the jury was entitled to find, that this was not a legitimate fishing charter boat venture but a front for a continuing illegal smuggling operation. Belanger was an organizer and officer of this corporation. Conversations in which Belanger participated, both before and after the March operation, indicated that further smuggling trips to Jamaica were planned. Belanger also discussed with his co-conspirators the importation of hashish which was not yet ready for import in March, the manufacture of a press for making hashish bricks and the use of a camel as a sort of trademark on the brick packages. This proof, the jury could find, indicated an intent on Belanger's part to continue his participation in an on-going smuggling operation.

■ The ability of the jury to distinguish those who conspired from those who did not is evidenced by their acquittal of the defendants Stephan and Calabro. Viewing the evidence in the light most favorable to the Government, we are satisfied that it was sufficient to sustain Belanger's conviction on both counts of the indictment.

There was proof that both Wilner and Vissa had a direct hand in the May operation. These appellants contend, however, that since, as they see it, the conspiracy conviction cannot stand because of the District Court's amendment of the indictment, their conviction on the substantive count must also fall because of the possibility that it resulted, in part at least, from the *Pinkerton* charge which was predicated upon a finding of conspiracy. Since we are affirming the conspiracy conviction, we need spend no time with this contention.

■ Appellants' arguments concerning allegedly improper comments in the prosecutor's summation can be quickly disposed of. The United States Attorney's reference to the role played by Air Seas Charter, Inc. and its officers was perfectly proper and in accordance with the Government's theory that this corporation was a "front" and the core of the smuggling operation. The prosecutor was entitled to marshal all the inferences which the evidence supported. *United States v. White*, 486 F.2d 204 (2d Cir. 1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974).

■ The proof established the illegal importation of almost a ton of marijuana in the space of a few months. With this background, it was not improper for the prosecutor to refer to the "problems of drugs" and the fact that there was a "lot of marijuana" involved. *United States v. Ramos*, 268 F.2d 878 (2d Cir. 1959). The District Judge carefully observed for the record that the prosecutor's comments were made in a "very calm, dispassionate tone".

A substantial portion of the defense summations was devoted to an attack upon the Government witnesses, Thurlow, Mitchell and Palmer. The contention was repeatedly made that these men were escaping prosecution and sentence because of their aid to the Government. Undoubtedly, it was this attack that prompted the prosecutor to point out

that these men had served their time and that, if defendants were acquitted, "they'll be laughing all the way to Williams Island".

A prosecuting attorney is not an automaton whose role on summation is limited to parroting facts already before the jury. He is an advocate who is expected to prosecute diligently and vigorously, albeit without appeal to prejudice or passion. His task is not rendered easy by the "no holds barred" tactics indulged in by all too many defense counsel in recent years.

■ Although we intend no criticism of defense counsel in the instant case, we believe that their heated attacks upon the Government's witnesses justified some sort of response. The prosecutor's further comment about the merriment which would result from an acquittal was a statement of the obvious. It constituted one paragraph of a 30 page summation made without objection at the conclusion of a 14 day trial. We see no prejudicial error.

## THE SECOND TRIAL

Since the defendant Mecca actively participated in all of the overt acts charged against the conspiracy, his appeal is not directed against the merits of the Government's case. Instead, he challenges the Government's use of a tape recording and the District Court's denial of his demand for a preliminary hearing relative to the same. The recording was of a conversation among Mecca, Wilner, Belanger and Palmer on February 22, 1973, at a time when Palmer was cooperating with the Government as an informer. It was made by means of a transmitter device worn by Palmer. All

this was disclosed at the first trial at which the tape was admitted into evidence.

■ Palmer testified at both trials that the recording was made with his consent, and there was therefore no violation of Mecca's Fourth Amendment rights. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Neither was there any violation of his Fifth Amendment rights. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). There was nothing in appellant's moving papers which justified an evidentiary hearing, *Lawn v. United States,* 355 U.S. 339, 348, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957), and the admission of the tape into evidence was clearly proper. *United States v. Kaufer,* 406 F.2d 550 (2d Cir.), *aff'd mem.,* 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969).

■ Mecca also argues that the District Court erred in failing to submit his defense of entrapment to the jury. We see no merit whatever in this contention. Mecca commenced his smuggling operations long before the alleged entrapper, Palmer, came upon the scene and continued them after Palmer had ceased to cooperate with the Government. There is no proof that Mecca was induced by the Government to commit the crimes for which he was convicted. Moreover, since the proof of Mecca's criminal propensities was uncontradicted and overwhelming, there was no issue of entrapment for the jury to consider. *United States v. McMillan,* 368 F.2d 810 (2d Cir. 1966); *United States v. Miley,* 513 F.2d 1191 (2d Cir. 1975).

We are satisfied that each of the appealing defendants was fairly tried and properly convicted.

We affirm.