**John GIBILARO, Petitioner-Appellee,**

v.

**Eugene LE FEVRE,**
**Respondent-Appellant.**

**Cal. No. 406, Docket 83–2227.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1983.

Decided Jan. 12, 1984.

Susan L. Yarbrough, New York City (Robert Abrams, Atty. Gen., of the State of New York, Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Michael B. Pollack, New York City (Fred Rothman and Glenn Stone, Legal Interns, New York City, on the brief), for plaintiff-appellee.

Before KAUFMAN and VAN GRAAFEILAND,* Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York (Weinstein, C.J.) which granted John Gibilaro's petition for a

---

* Because of the illness of the Hon. Clement F. Haynsworth, U.S. Court of Appeals, Fourth Circuit, sitting by designation, the parties agreed that this case be determined by Judges Kaufman and Van Graafeiland, who are in agreement. This procedure is authorized by § 0.14(b) of the Rules of this Court.

writ of habeas corpus because of an allegedly improper comment during summation by the State prosecutor. We reverse.

In 1976, Gibilaro was convicted in Supreme Court, Queens County, of rape in the first degree, sodomy in the first degree, attempted rape in the first degree, and unlawful imprisonment in the first degree. The Appellate Division, Second Department, affirmed the conviction without opinion, and the New York Court of Appeals denied leave to appeal. Gibilaro filed his habeas corpus petition in July 1981.

The record on appeal shows that Gibilaro was arrested on June 11, 1974, in connection with three incidents of sexual assault. Following his arrest, Gibilaro made a full confession to Detective Ronald Policare at the station house. Gibilaro then repeated his confession to Assistant District Attorney Michael Schwed, who later prosecuted Gibilaro's case. At the pretrial *Wade-Huntley* hearing, Schwed announced his intention to testify concerning the giving of *Miranda* warnings and instructions to a lineup witness. In exploring the possibility that Schwed's proposed testimony could be covered by stipulation, defense counsel inquired whether Schwed had heard any part of Gibilaro's confession. When Schwed answered that he had been present, defense counsel stated "Then perhaps we had better have the testimony." Schwed's testimony included a recital of Gibilaro's confession, which was to the effect that committing the assaults was the only way he could become sexually aroused.

At trial, the defense did not dispute that Gibilaro had committed the acts with which he was charged, the only issue being whether he was mentally responsible for his conduct. Both sides introduced psychiatric testimony. Detective Policare also testified concerning what Gibilaro had told him, which was in substance what Gibilaro had told Schwed. At the request of defense counsel and pursuant to stipulation, Schwed's testimony at the pretrial hearing, at least half of which was interrogation by defense counsel, then was read to the jury.

Thereafter, in response to defense counsel's argument that Gibilaro committed the sexual assaults in a "dreamlike" state, in response to "voices", and without knowing "what the heck he was doing", Schwed said in summation:

If you remember the confession he gave to the police, it was obvious from that that he knew he did something wrong. He never told the detective that, "God told me to do this." Or, "Why am I here? I didn't do anything wrong." He knew he did something wrong. It was very apparent to him.

Mr. Spirn says he wasn't there. Dr. Kinzel comes into the case later but I was there in the station house too; I heard him. My testimony was read.

MR. SPIRN: I will object to this.

THE COURT: Overruled.

MR. SCHWED: You heard my testimony, that he told me at that time that the reason he did it was not because God was telling him to do it, not because he thought this was the right thing to do but because it was the only way that he could achieve sexual gratification. That is the reason he did it. The only way he could become aroused was to take a knife to a woman and do it.

■ In an oral decision which followed a hearing on the habeas corpus petition, Chief Judge Weinstein held that the reading of the prosecutor's *Wade-Huntley* testimony at the request of defense counsel was not a constitutional violation. We agree. *See Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 1696, 48 L.Ed.2d 126 (1976). He also held that most of the above-quoted argument by the prosecutor was not such a constitutional violation as would warrant habeas corpus relief. Again, we agree. *See United States v. Canniff,* 521 F.2d 565, 571 (2d Cir.1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976). However, focusing solely on the sentence, "That is the reason he did it", Chief Judge Weinstein concluded that this was an expression of personal opinion which tainted the entire trial to such an extent as to

mandate the grant of a section 2254 writ. We disagree.

Our right to review State court proceedings is "the narrow one of due process, and not the broad exercise of supervisory power that [we] would possess in regard to [our] own trial court." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) *(quoting DeChristoforo v. Donnelly,* 473 F.2d 1236, 1238 (1st Cir. 1973)). Federal courts may intervene in State court proceedings "only to correct wrongs of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). In reviewing Assistant District Attorney Schwed's comments in this limited fashion, we must bear in mind that he "was entitled to marshall all the inferences which the evidence supported." *United States v. Wilner,* 523 F.2d 68, 73 (2d Cir.1975); *see United States v. DeFillo,* 257 F.2d 835, 840 (2d Cir.1958), *cert. denied,* 359 U.S. 915, 79 S.Ct. 591, 3 L.Ed.2d 577 (1959). We should not confuse arguments fairly based on the evidence with expressions of the prosecutor's personal belief. *United States v. Canniff, supra,* 521 F.2d at 571.

█ The evidence concerning Gibilaro's stated desire for sexual arousal was fairly in the record and was uncontradicted. In rebutting the asserted defense of mental incapacity, the prosecutor referred to Gibilaro's admission that "it was the only way he could achieve sexual gratification", and continued, "That is the reason he did it." Nothing in the Constitution prohibits a prosecutor from thus arguing the thesis and merits of his case. *See, e.g., United States v. Caldwell,* 543 F.2d 1333, 1360–62 (D.C.Cir. 1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Brown,* 456 F.2d 293, 295 (2d Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972).

Reversed.