Hubert SNOW, Petitioner,

v.

Theodore C. REID; Fishkill Correctional Facility, Respondent.

No. 84 Civ. 8685–CLB.

United States District Court, S.D. New York.

Sept. 24, 1985.

Hubert Snow, Fishkill Correctional Facility, pro se.

Robert Abrams, Atty. Gen., of the State of N.Y. by Joyce Andren, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

This petition by a state prisoner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on December 4, 1984 by petitioner Hubert Snow. The Attorney General of the State of New York filed a memorandum of law and affidavit in opposition on May 20, 1985. In addition, the Court has been supplied with transcripts of both the *Wade* hearing [*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)] and the trial in state court, as well as the briefs of both parties on appeal.

On September 16, 1981, petitioner was charged by a grand jury in New York County in an indictment containing two counts of robbery in the second degree, N.Y.Penal Law § 160.10(1). Co-defendant Cameron Cintron was indicted on these counts on the same day. On June 30, 1982, after an evidentiary hearing denying suppression of a pre-trial identification of the petitioner, petitioner was convicted of both counts by a trial jury. He was sentenced to an indeterminate term of imprisonment of from four to eight years.

Petitioner's conviction was affirmed without opinion by the Appellate Division, First Department, on April 26, 1984. *People v. Snow*, 100 A.D.2d 984, 474 N.Y.S.2d 1003. On June 20, 1984 his application for leave to appeal to the Court of Appeals of

New York was denied. *People v. Snow*, 62 N.Y.2d 992 (1984).

Petitioner alleges three grounds in support of his application for a writ of habeas corpus: (1) that the prosecution failed to prove beyond a reasonable doubt that petitioner committed the crimes of which he is charged; (2) that the testimony of a prosecution witness improperly "bolstered" the complainants' in-court testimony in denial of petitioner's due process rights to a fair trial; and (3) that misconduct by the prosecutor during her summation deprived him of his due process rights to a fair trial.

All of the petitioner's state remedies have been exhausted. The Court will therefore address the merits of his claims.

*Failure to Prove Petitioner's Guilt Beyond a Reasonable Doubt.*

Petitioner contends that the state had failed to produce sufficient competent evidence to identify him as the alleged perpetrator beyond a reasonable doubt. Specifically, petitioner contends that the prosecution witnesses' in-court identification of him as their assailant is a product not of their independent recollection of the actual events, but rather of an unfairly suggestive and prejudicial identification procedure employed by the arresting officers. He argues that, as a result of this procedure, neither the in-court nor pre-trial identification is reliable, and therefore under the Constitution neither may properly support this conviction that rests substantially or exclusively on eyewitness identification testimony.

█ A federal habeas corpus court must uphold a state court conviction if "review of the record in the light most favorable to the prosecution convinces [the federal court] that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). To apply this standard, this Court must consider whether the facts presented to the jury were properly before them. The petitioner specifically challenges the competency of the victims' pretrial identification, which the trial court

admitted after an evidentiary hearing, upon finding that the circumstances surrounding the identification were not unnecessarily suggestive. (Wade Tr. p. 46). Although federal habeas corpus courts are required to defer to fair and reliable state findings of fact, *see Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254(d), the constitutionality of pre-trial identification procedures in a specific case poses a mixed question of fact and law. *See Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) *(per curiam )*. This permits a federal habeas corpus court to review the facts in the record and to reach a different conclusion in light of the legal standard. *See id.*

█ A conviction based on eyewitness identification will be set aside if the pre-trial identification procedure used was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1245 (1968).

█ This Court, upon its review of the record, finds that the state trial court properly admitted evidence of the witnesses' pre-trial identification and that a conviction based upon that evidence did not violate petitioner's due process rights.

In this case, the confrontation of Snow by the witnesses, occurring within five minutes of the crime, was not so suggestive as to taint their identification of him as their assailant. The witnesses, Sui Ming Chan (S.M. Chan) and Shu Lung Chan (S.L. Chan), who were the victims of the crime, had an adequate opportunity to view Snow on the night they were robbed. Both men testified that the crime had occurred on a public sidewalk in Manhattan, at 4:00 A.M. under the light of a street lamp (Tr. at 49, 138); S.M. Chan testified that he recognized Snow as one of the men who reached into his pocket (Tr. at 133); and S.L. Chan testified that he focused on the petitioner's face as Snow forcibly removed S.L. Chan's watch from his wrist (Tr. at 161–62).

Moreover, the Chans' identification of Snow moments later was swift and positive.

The challenged confrontation itself was purely fortuitous. Two plainclothes police officers on patrol in an unmarked car observed a group of young men in physical contact with the Chans. Before the police arrived at the scene, the group had left. Upon ascertaining from the victims that a robbery had occurred, the officers immediately pursued the group down a crowded street. Minutes later, an unknown civilian singled out an individual on the street as one of Chan's robbers. As Officer Thomas DeWitt grabbed that man, Snow leaped out of the crowd and tackled DeWitt, allowing the first man to escape. Officer DeWitt eventually subdued Snow and placed him in the doorway of a nearby restaurant in the custody of the other plainclothes officer. A minute or two later, the Chans arrived from the crime scene, less than a city block removed from the point of arrest, and, upon spotting Snow, immediately and unequivocally identified Snow as one of the robbers, based on their recollection of the crime that had occurred only moments before.

From this account, this Court concludes that any danger of "irreparable misidentification" invited by the inherent suggestiveness of custodial identifications of the customary sort was absent in this case because of these unusual circumstances. The victim-witnesses each had an opportunity to view the petitioner at the time of the crime and they were attentive to detail. The interlude of time between the robbery and the confrontation was brief. The witnesses evinced a high degree of certainty in making the identification. These factors, taken together, made the identification sufficiently reliable to satisfy the *Simmons* standard for admissibility. *See Manson v. Brathwaite*, 432 U.S. 98, 114, 116, 97 S.Ct. 2243, 2253, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). The weight to which that evidence was entitled is of course a question of fact for the jury. *See Manson v. Brathwaite, su-*

*pra*, 432 U.S. at 116, 97 S.Ct. at 2253. It is clear, however, that from the evidence presented, a rational factfinder readily could have found Snow guilty beyond a reasonable doubt.

*Improper "Bolstering" of Witnesses' Identification.*

As his second basis for attacking his conviction, petitioner alleges that the court improperly admitted testimony of Officer DeWitt that had the effect of "bolstering" the Chans' in-court identification of petitioner.

 The concept of "bolstering" really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, derived from *People v. Trowbridge*, 305 N.Y. 471, 113 N.E.2d 841 (1953), which holds that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification did occur. Violation of that rule, as is so with regard to many such state court rules, does not rise to a constitutional level. Under Rule 401, F.R.Evid., which is consistent with the Constitution, any evidence is relevant which has "any tendency to make the existence of any fact that is of consequence to the determination of the action than it would be without the evidence. So-called "bolstering" is within that rule, subject only to limitation by the trial judge finding under Rule 403, F.R.Evid., that "unfair" prejudice might result. *See also* Rule 801(d)(1)(C), F.R.Evid., which represents a federal legislative finding that such bolstering testimony is non-hearsay, and admissible, subject only to the limitation, if any, which Rule 403 applies in any case. Judge Weinfeld has noted that:

> "As to petitioner's assertion that such evidence of prior identification is improper 'bolstering,' this Circuit has never regarded the practice as inimical to trial fairness." *Orr v. Schaeffer*, 460 F.Supp. 964, 967 (S.D.N.Y.1978).

In any event, the instant petition does not present a case of "bolstering" in the

traditional sense. Officer DeWitt refrained from making any reference to the Chans' pre-trial identification that could be regarded by the jury as bolstering. The testimony objected to as "bolstering" is found in reference to a conversation between the Chans and Officer DeWitt that occurred immediately prior to petitioner's arrest. Officer DeWitt testified on direct with reference to having been "jumped" by petitioner, as follows:

"A. We then fell to the ground and I then grabbed him [Snow] and stood him up by Nathan's [Restaurant].

Q. Did you notice whether or not the Chinese gentlemen arrived at that location at some point?

A. Yes, then they arrived after that.

Q. About how long after you got to Broadway and 43rd Street did the two Chinese gentlemen arrive there?

A. Maybe a minute or two.

Q. And at that time did you have a conversation with the two Chinese gentlemen?

A. Yes.

Q. What did you do as a result of that?

A. I placed Mr. Snow under arrest." (Tr. at 185).

While it must be obvious to the jurors that only an identification by the Chans could have "resulted" in Snow's arrest, this oblique reference to the Chans' identification can hardly be said to have reinforced an already emphatic identification made by the Chans themselves.

*Prejudicial Summation.*

The petitioner contends that the prosecutor's summation exceeded fair comment so as to deprive him of a fair trial. He identifies four specific incidents of alleged prosecutorial misconduct: (1) the prosecutor improperly argued that the Chans' identification testimony was credible because they are successful businessmen; (2) referred to facts not in evidence and urged the jury to draw conclusions that could not be inferred from the record; (3) she suggested that defense witnesses were lying; and (4) she ridiculed defense counsel and petitioner's

case. None of these contentions has any merit.

As a threshold matter, it is well settled that federal habeas corpus relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were "so fundamentally unfair as to deny the [petitioner] a fair trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). Within the broad compass of fair comment, a prosecutor may use the summation to argue the merits and thesis of her case. *See Gibilaro v. LeFevre*, 725 F.2d 199, 201 (2d Cir.1984). That necessarily includes the right to discuss the motives and credibility of any witnesses, *see United States v. DeAngelis*, 490 F.2d 1004, 1008 (2d Cir. 1974), *cert. denied*, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 306 (1974), to marshal favorable inferences, *see United States v. Wilner*, 523 F.2d 68, 73 (2d Cir.1975), and in general to make any fair comments which the evidence supports.

In this case, each of the prosecutor's statements is supported sufficiently by the record, and therefore not subject to successful attack on constitutional grounds. Petitioner first claims that the prosecutor's description of the Chans as "intelligent, successful businessmen" (Tr. 318) was improper. That comparatively innocuous characterization was drawn legitimately from the trial record. The Chans owned a garment factory. The jurors could assess their intelligence and their success. The argument was relevant both as to credibility and the reliability of the identification testimony.

Snow's second claim, that the prosecutor referred to facts not in evidence and encouraged the jury to engage in speculation prejudicial to the petitioner is also unsupported. The prosecutor asserted that Snow had reached into S.M. Chan's pocket during the robbery (Tr. 321). This was supported by credible testimony (Tr. 133). She also argued, as an alternative basis of guilt, that Snow had abetted the crime against the Chans (Tr. 321). She concluded her

discussion by urging the jury to rely on their own recollections (Tr. 321), an instruction repeated by the court (Tr. 327). *See Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954).

 The presumption of *Opper* that a jury will follow a trial judge's admonitions also attaches to curative instructions made by the court with respect to the prosecution's exercises in speculation now claimed to be improper. *See Donnelly v. DeChristoforo*, 416 U.S. at 644, 94 S.Ct. at 1872. In her summation, the prosecutor suggested a possible explanation—disadvantageous to the petitioner—to account for the absence of stolen property on the petitioner's person. She said:

"MS. SHIELS: I'm putting the question to you, ladies and gentlemen. Why was not property found on Hubert Snow and why was not property found on Cameron Cintron and I'll tell you why, because when the police came they ran, they knew the police were coming. They didn't want to be caught with the goods because they knew they'd be in more trouble, so they either threw it on the ground or they handed it off to one of their friends. That's why the property was not found.

MR. ROSENTHAL: I object to that.

THE COURT: The jury may not guess or speculate as to this. Please understand that.

MR. ROSENTHAL: I would ask that the argument be stricken.

THE COURT: Yes, I will strike that.

MS. SHIELS: May we have a sidebar?

THE COURT: The District Attorney may not ask you to guess or speculate what transpired with regard to the property.

MS. SHIELS: May I have a sidebar?

THE COURT: Yes.

\* \* \* \* \* \*

MS. SHIELS: I believe I'm permitted to suggest a theory to them. I'm not telling them what happened. I'm suggesting.

THE COURT: You are asking them to speculate—

MS. SHIELS: Not speculation.

THE COURT: It is speculation. You feel this is what could have happened, not permitted to do that. I will not allow that. That's it." (Tr. at 324–26).

This was a permissible response to a hypothesis previously posited by defense counsel in their summations to the effect that absence of any part of the loot suggested misidentification of Snow as the perpetrator. *See, e.g., United States v. Marrale*, 695 F.2d 658, 667 (2d Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); *United States v. LaSorsa*, 480 F.2d 522, 526 (2d Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). The trial court took great care to mitigate the potentially prejudicial effect of these comments and in so doing protected the petitioner's constitutional right to a fair trial. *See Donnelly v. DeChristoforo*, 416 U.S. at 644, 94 S.Ct. at 1872.

 The petitioner's last two contentions accuse the prosecutor of improperly denigrating the defense case. First, the petitioner objects to comments about the defense witnesses' credibility and to insinuations that they had lied. This claim cannot be sustained. Although the Court of Appeals has recognized that some comments on the credibility of defense witnesses may be so prejudicial as to render the entire trial unfair, *see United States v. Drummond*, 481 F.2d 62, 64 (2d Cir.1973), it also recognizes that the ultimate issue of claimed unfairness must be resolved in view of the summation as a whole. *See United States v. Marrale*, 695 F.2d at 666, n. 9. Upon reviewing this summation and in light of the trial judge's careful attention to what was being said and to the objections taken, this Court concludes that Snow was not denied due process.

 Lastly, petitioner objects to the prosecutor's intimations that defense counsel had intentionally obfuscated the truth, specifically by her traditional but overblown allusions to the natural evasion tech-

niques of the squid and octopus, and some arcane reference to skunks. (Tr. 335–36). An objection to reference to the skunk was sustained by the trial court. This Court does not find prosecutor's remark that defense counsel were "trying to cloud the waters" as squid and octopi are reputed to do, in the entire context of this trial record, to be anything more than useless bloviation in the tradition of a television crime show. Unlike improper prosecutorial statements calculated to place the jury themselves in a position of ridicule should they accept the defense's contentions, *see, e.g., United States v. Modica,* 663 F.2d 1173, 1180 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *United States v. Gonzalez,* 488 F.2d 833, 836 (2d Cir.1973); *United States v. Drummond,* 481 F.2d at 64, the net effect of what the prosecution said here was merely to urge the jurors to ascertain the truth and decide accordingly. (Tr. 336–37). The prosecutor's summation in its totality was not so prejudicial as to require that this conviction be vacated.

*Conclusion.*

For the foregoing reasons, the Clerk shall enter a judgment that all relief shall be denied.

So Ordered.