**Juan Moises CASTRO, Petitioner,**

v.

**James SULLIVAN, Superintendent, Sing Sing Correctional Facility, Respondent.**

No. 85 Civ. 7567 (JMW).

United States District Court,
S.D. New York.

June 10, 1987.

Juan Moises Castro, pro se.

Jeremy Gutman, Stacey K. Edelbaum, Office of the Dist. Atty., Bronx County, New York City, for respondent.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### I. INTRODUCTION

Petitioner Juan Moises Castro ("Castro") brings the instant application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, against Respondent James Sullivan ("Sullivan"), superintendent of Sing Sing Correctional Facility. Petitioner contends that his rights under the United States Constitution were violated during his state criminal trial, which concluded with petitioner's conviction on charges of Second Degree Murder, Attempted Second Degree Murder, First Degree Robbery, and Second Degree Criminal Possession of a Weapon.

For the reasons set forth below, petitioner's application for a writ of habeas corpus is denied.

## II. STATEMENT OF FACTS

The instant petition arises out of a November 13, 1980 robbery and shooting in a grocery store located at 100 East 174th Street in The Bronx, New York. At the time of the robbery, William Belen, the owner of the store, Adolfo Montenegro, and Hector Vega were working in the store. Belen was killed by gunshot wounds sustained during the shooting, while Montenegro suffered bullet wounds in his right forearm and right shoulder.

On March 9, 1982, after a trial in the New York Supreme Court for Bronx County, a jury convicted both petitioner and his co-defendant Guillermo Valdez. Petitioner was convicted of Second Degree Murder, First Degree Robbery, and Second Degree Criminal Possession of a Weapon. Petitioner subsequently received a sentence of two concurrent prison terms of from 25 years to life for his participation in the robbery and shooting, as well as four shorter concurrent terms.

At petitioner's trial, Detective William Dowdell testified that on December 1, 1980, he and one Detective Modesto visited the Bronx-Lebanon Hospital to interview Montenegro, who was wounded in the shooting. From a photo array, Montenegro identified Valdez as one of those responsible for the grocery store robbery and shooting. The state did not call Modesto to testify at petitioner's trial.

On December 11, 1980, police placed Valdez in a line-up, from which Montenegro identified Valdez as one of the perpetrators of the robbery and shooting. Following further investigation, police came to believe that petitioner also was involved in the incident and arrested him on December 23, 1980. Shortly after this arrest, Montenegro identified petitioner from a line-up.

During petitioner's trial, the state introduced testimony from Marguerita Hiciano, who stated that she had accompanied Petitioner, Valdez and two other men on the night of the shooting. Hiciano further testified that she saw petitioner fire his gun at either Belen or Montenegro. The state also introduced testimony from Mirta Vasquez, who stated that petitioner drove her past the 174th Street grocery store and told her that the store was closed because he had killed the owner and his "son."

On direct examination, the prosecution asked Vasquez if she was "scared" to testify, to which Vasquez answered "yes." On cross-examination, the defense questioned Hiciano and Vasquez as to whether they had made sexual advances on Jacqueline Castillo, petitioner's former lover. Hiciano and Vasquez both denied making any such advances on Castillo.

Petitioner testified in his own defense, stating that he was asleep at his parents house when the robbery and shooting occurred. As evidence of his good character, petitioner also testified that he had worked simultaneously at two different jobs, earning $500/week, and had lived with his parents. On cross-examination, the government produced a transcript of a prior interview conducted between petitioner and the New York City Criminal Justice Agency, in which petitioner stated that he had worked as a "cloth marker," earning $165/week, and had lived with his wife, rather than with his parents.

During his closing statements, the prosecution urged the jury to discredit the defense attorneys' argument, stating: "Don't be fooled by the illusionist trick." The prosecution also argued in his summation that the jury should accept Montenegro's identifications of petitioner and Valdez as valid, describing human memory of a traumatic event as "like a camera, [which] takes a picture and that picture is stored on the film and that film is memory."

At the conclusion of petitioner's trial, the trial judge did not instruct the jury that the government's failure to call Detective Modesto suggested that Modesto's testimony would have weakened the government's case. Also, at three points in his charge, the trial judge instructed the jury that they must determine the "guilt or innocence" of petitioner and Valdez.

Respondent Sullivan initially moved to dismiss the instant petition on the grounds that petitioner had failed to exhaust his state remedies. In a December 17, 1986 memorandum and order, this Court found that petitioner had exhausted his state remedies, and authorized respondent to file amended papers discussing the substantive arguments raised in the habeas petition.

## III. DISCUSSION

### A. EVIDENTIARY RULINGS.

Petitioner argues that the state trial court committed reversible error in two of its evidentiary rulings: 1. Admission of a prior inconsistent statement of petitioner made during an interview with law enforcement officials, and 2. Exclusion of testimony concerning the past sexual relationships of two prosecution witnesses.

### 1. *Prior Inconsistent Statement.*

Petitioner objects to the admission in rebuttal of petitioner's interview by the New York City Criminal Justice Agency, wherein he stated that he lived with his wife and worked as a "cloth marker," earning $165/week. This statement contradicted petitioner's direct testimony that he lived with his parents and earned $500/week by working at two different jobs. Petitioner argues that his statement to the Justice Agency was "collateral" to the prosecution's case and should have been excluded. This argument is without merit.

■ "It is within the discretion of the [trial] court to determine whether to allow inquiry into specific instances of conduct, not the subject of a conviction, for the purpose of proving a witness' truthfulness or untruthfulness." *United States v. Barrett,* 766 F.2d 609, 615 (1st Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985). A trial court possesses particularly broad discretion to determine permissible areas of inquiry on rebuttal. *See, e.g., Travison v. Jones,* 522 F.Supp. 666, 669 (N.D.N.Y.1981); *United States ex rel. Delrow v. Zelker,* 324 F.Supp. 383, 385 n. 10 (S.D.N.Y.1971). Accordingly, the Supreme Court has held that the prosecution

may rebut a defendant's testimony through the use of otherwise inadmissible evidence. *Harris v. New York,* 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971); *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

■ In the instant case, petitioner "opened the door" to the government's rebuttal evidence by testifying that he resided with his parents and earned an income of about $500/week. *See United States v. Bentvena,* 319 F.2d 916, 946 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Petitioner put in this evidence as tending to show that he lacked either the motive or predisposition for criminal activity. The court's admission of the Justice Agency transcript in rebuttal, including petitioner's statement that he lived with his wife and earned $165/week, was not constitutionally impermissible. *See United States v. Curry,* 358 F.2d 904, 910 (2d Cir.1965), *cert. denied,* 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966) (government may use defendant's statement to law enforcement officials on rebuttal, even where statement would be inadmissible as direct evidence); *United States v. Bentvena,* 319 F.2d 916, 945 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963) (government may introduce evidence of defendant's prior narcotics convictions only to rebut defendant's denial of any prior criminal record).

■ Petitioner cites some New York law which suggests that the state trial court should have excluded the Justice Agency transcript as prejudicial and irrelevant. *People v. Hicks,* 102 A.D.2d 173, 182–83, 478 N.Y.S.2d 256, 262 (1st Dep't 1984). However, this Court need not consider this issue of state law, since "[a] habeas challenge based on an improper evidentiary ruling is 'foreclosed absent a specific showing of a violation of a [federal] constitutional right.'" *Gilmore v. Curry,* 523 F.Supp. 1205, 1208 (S.D.N.Y.1981) (quoting in part *Bell v. New York,* 506 F.Supp. 590, 594 (S.D.N.Y.1981), *aff'd mem.,* 659 F.2d 1057 (2d Cir.1981)). Nowhere do the state cases cited by petitioner hold that the admission in rebuttal of a defendant's statement in

the circumstances presented here would violate any specific provision of the United States Constitution.

Accordingly, the admission in rebuttal of petitioner's prior inconsistent statements to the Justice Agency does not warrant this Court's reversal of his state court conviction.

### 2. Sexual Relationships of Prosecution Witnesses.

█ During the defense case, petitioner sought to introduce testimony of Jacqueline Castillo, petitioner's former lover, that two of the prosecution's female witnesses, Margarita Hiciano and Mirta Vasquez, had made unsuccessful sexual advances toward Castillo. The defense wanted to show that Hiciano and Vasquez had a motive to testify falsely against petitioner. Earlier in the trial, Hiciano and Vasquez denied on cross-examination that they had made sexual advances toward Castillo. Petitioner contends that the trial judge's refusal to allow the defense to put in Castillo's testimony violated petitioner's fourteenth amendment due process rights.

"Discretionary evidentiary rulings by the state court trial judge are not reviewable on habeas corpus petition unless the rulings infringe a particular constitutional right of the petitioner." *McCormack v. Walters*, 550 F.Supp. 80, 81 (S.D.N.Y.1982); *accord United States v. Terebecki*, 692 F.2d 1345, 1349 (11th Cir.1982). In *United States v. Glover*, 588 F.2d 876 (2d Cir.1978) (per curiam), the Second Circuit Court of Appeals held that the trial judge's exclusion of psychiatric testimony, suggesting that a prosecution witness might have shaded her testimony to favor her former lover at the defendant's expense, did not constitute reversible error. *Id.* at 878. Other decisions have concluded that a trial court's exclusion of evidence of sexual relationships to show testimonial motive is not an abuse of discretion, where such relationships are not related directly to the alleged criminal transactions. *See, e.g., United States v. Allen*, 772 F.2d 1555, 1557 (11th Cir.1985) (no abuse of discretion in exclusion of questioning as to sexual relation-

ship between government witness and his legal ward); *United States v. Colyer*, 571 F.2d 941, 946 n. 7 (5th Cir.1978), *reh'g denied*, 576 F.2d 1249 (5th Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978) (trial court could bar questions as to a witness's homosexuality, since such sexual orientation "would have nothing to do with his credibility as a witness"); *United States v. Harris*, 542 F.2d 1283, 1302 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed2d 779 (1977) ("We do not find that a sexual relationship will per se give rise to bias, either favorable or unfavorable."). *See also Taylor v. Curry*, 708 F.2d 886, 891–92 (2d Cir.), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983).

In the instant case, petitioner does not claim that he had a sexual relationship with a government witness, but merely argues that government witnesses made unsuccessful sexual advances on his former lover. Any such incidents, if they occurred, would likely have but a marginal bearing on their credibility bolstered as it was by the testimony of the victim. Nonetheless, the state trial judge allowed cross-examination of both Hiciano and Vasquez as to whether they had made any sexual advances toward Castillo, which both denied. The trial judge's decision to preclude petitioner's further exploration of this collateral issue does not constitute an abuse of discretion, much less constitutional error requiring reversal of petitioner's conviction.

### B. JURY INSTRUCTIONS.

Petitioner argues that the state trial court's jury charge resulted in reversible error and a violation of the fourteenth amendment due process clause. Specifically, petitioner asserts that the prosecution's failure to call a Detective Modesto as a witness necessitated a "missing witness" charge, to the effect that, if called, the detective might have given testimony unfavorable to the prosecution. Petitioner also claims that the trial court's charge to the jury failed to state clearly that the prosecu-

tion must prove a criminal defendant guilty beyond a reasonable doubt.

"[A] single instruction to a jury may not be judged in artificial isolation...." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Instead, any "challenged instruction must be examined in the context of the charge as a whole." *United States v. Toner*, 728 F.2d 115, 124 (2d Cir.1984). With due regard to the entire charge, this Court cannot conclude that the trial judge committed reversible error.

### 1. *Missing Witness Charge.*

■ During petitioner's criminal trial, the prosecution did not call Detective Modesto, who accompanied Detective Dowdell, who did testify, to the session at which Montenegro identified Valdez from a group of photographs as one of perpetrators of the November 13 shooting and robbery. Petitioner contends that the prosecution's decision not to call Modesto entitled the defense to a jury instruction stating that Modesto might have testified in a manner unfavorable to the prosecution.

"The rule which forms the basis of the 'absent witness' instruction provides that 'if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.'" *United States v. Anders*, 602 F.2d 823, 825 (8th Cir.1979) (quoting in part *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893)); *accord United States v. Debango*, 780 F.2d 81, 84 (D.C.Cir.1986). "Whether or not such a 'missing witness' instruction should be given lies in the sound discretion of the trial court." *United States v. Miranda*, 526 F.2d 1319, 1330–31 (2d Cir. 1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

In the instant case, petitioner has failed to make any showing that it was solely within the power of the prosecution to produce Modesto as a witness. "Where a witness is equally available to both sides, the inference suggested by the ... [missing witness charge] lacks force." *United States v. Obayagbona*, 627 F.Supp. 329, 344 (E.D.N.Y.1985). In fact, the prosecution offered to produce Modesto if the defense wished to call the detective as a witness, but the defense declined to place Modesto on the witness stand. Moreover, in all likelihood, Modesto's testimony would have been cumulative to that of Dowdell, who had witnessed the same relevant events. Under such circumstances, no missing witness instruction was required. *See, e.g., United States v. Coe*, 718 F.2d 830, 841–42 (7th Cir.1983); *United States v. Burgos*, 579 F.2d 747, 750 (2d Cir.1978); *United States v. Mahone*, 537 F.2d 922, 926–28 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *United States v. Johnson*, 467 F.2d 804, 808 (1st Cir.1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973).

This Court thus holds that the trial court's refusal to give a missing witness instruction did not constitute reversible error, much less offend constitutional due process.

### 2. *Reasonable Doubt.*

Petitioner also objects to the trial court's instructions on the quantum of evidence that the state must produce to prove a criminal defendant guilty. Specifically, petitioner complains that since the court instructed the jury in three instances that they must determine defendant's "guilt or innocence," the jury was prevented from focusing on the requirement that the state prove its case beyond a reasonable doubt.

■ In assessing a claim that a jury charge unconstitutionally relieved the government from its burden of proof, a court must examine whether the charge, "taken as a whole ... 'successfully conveyed the substance of the concept' of reasonable doubt." *United States v. Sliker*, 751 F.2d 477, 486 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985) (quoting in part *United States v. Ivic*, 700 F.2d 51, 69 (2d Cir.1983)). Upon consideration of the entire charge in the instant case, the Court concludes that

the trial judge successfully imparted the concept of reasonable doubt to the jury.

■ During his charge, the state trial judge stated repeatedly that the jury must find the defendants' guilt beyond a reasonable doubt before returning a conviction. For example, after summarizing the elements of the charges brought against petitioner, the court stated:

> The rule of law is that the defendant[s] are presumed innocent at all times[,] and that presumption continues right through this case until you reach a verdict one way or another. Any person charged with crime is presumed to be innocent until his guilt has been established beyond a reasonable doubt.

*Transcript*, at 630. And at the conclusion of his charge, the judge again reminded the jury:

> The law of the State of New York has placed in your hands, as jurors in a criminal trial, the exclusive right to determine the guilt or innocence of the defendant and to determine whether the defendant's guilt has been proven by the prosecution beyond a reasonable doubt.

*Transcript*, at 667.

Given the repeated reference throughout the charge to the requirement that the state prove petitioner's guilt beyond a reasonable doubt, this Court cannot find that the state trial court's occasional use of the phrase "guilt or innocence" confused the jury on the applicability of the reasonable doubt standard. Case law demonstrates that a jury charge including descriptive phrases, such as "guilt or innocence," together with the term "reasonable doubt" does not require reversal. Indeed, this Court has refused to reverse a conviction where the state court had charged a jury incorrectly that " 'proof beyond a reasonable doubt' is equivalent to 'proof to a moral certainty'...." *Dudley v. Dalsheim*, 526 F.Supp. 88, 91 (S.D.N.Y.1981), *aff'd mem.*, 686 F.2d 110 (2d Cir.1982). Similarly, this Court has held that an instruction requiring proof of a defendant's guilt "to your satisfaction," charged together with the reasonable doubt standard, does not amount to constitutional error.

*Carter v. Scully*, 533 F.Supp. 257, 263 (S.D.N.Y.1982). *See also Rivera v. Smith*, 544 F.Supp. 12, 14 (S.D.N.Y.1982); *Gilmore v. Curry*, 523 F.Supp. 1205, 1208 (S.D.N.Y.1981).

In short, this Court concludes that neither the state trial court's exclusion of a missing witness charge, nor the court's charge on reasonable doubt, requires reversal of petitioner's conviction.

## C. PROSECUTOR'S STATEMENTS.

Petitioner argues that various statements made by the prosecutor deprived him of a fair trial, in violation of the due process clause of the fourteenth amendment. Petitioner objects to the prosecution's asking a witness, on direct examination, if she was "scared," and further complains that the prosecution made inflammatory statements and alluded to matters not in evidence during his closing remarks. These arguments are wholly without merit.

"As a threshold matter, it is well settled that federal habeas corpus relief is not available on the basis of improper prosecutorial statements at trial unless the errors ... were 'so fundamentally unfair as to deny the [petitioner] a fair trial.' " *Snow v. Reid*, 619 F.Supp. 579, 583 (S.D.N.Y. 1985) (quoting in part *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974)); *accord Camara v. Scully*, 624 F.Supp. 106, 110 (S.D.N.Y.1985). In the instant case, none of the prosecutor's statements were "so fundamentally unfair."

■ The Court rejects petitioner's argument that the prosecution's decision to ask Mirta Vasquez, a government witness, if she was "scared" constitutes reversible error. *Transcript*, at 427. On the contrary, "[e]vidence of conduct designed to impede or prevent a witness from testifying is admissible to show consciousness of guilt...." *United States v. Lord*, 565 F.2d 831, 835 n. 2 (2d Cir.1977). *See also United States v. Bein*, 728 F.2d 107, 114–15 (2d Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984); *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d

Cir.1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973). Questioning designed to elicit such testimony was appropriate in the instant case, since Vasquez had revealed out of the jury's presence that petitioner or his family had in fact threatened her. *Transcript*, at 346–48. Under these circumstances, the prosecution's questioning of Vasquez on that score had a good faith basis and was entirely appropriate.

Nor does the prosecutor's conduct during his closing argument mandate reversal. "Both prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments." *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir.1978).

> "Within the broad compass of fair comment, a prosecutor may use the summation to argue the merits and thesis of her case.... That necessarily includes the right to discuss the motives and credibility of any witnesses, ... to marshal favorable inferences ... and in general to make any fair comments which the evidence supports."

*Snow v. Reid*, 619 F.Supp. 579, 583 (S.D.N.Y.1985) (citations omitted).

■ The prosecutor's caution regarding the defense's summation, "Don't be fooled by the illusionist trick," did not fall outside this "broad compass of fair comment." In *United States v. Marrale*, 695 F.2d 658, 667 (2d Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983), a prosecutor's warning that the jury should not "be fooled" was held not to have deprived the defendant of a fair trial. Other cases evaluating claims of impermissible comments during the prosecution's summation have reached similar results. *See, e.g., United States v. Patel*, 762 F.2d 784, 795 (9th Cir.1985) (comment that witness "was just dead wrong" was not prejudicial); *United States v. Hattaway*, 740 F.2d 1419, 1426 (7th Cir.), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984) (prosecutor's summation comment that jury should not "pay lip service to some slogan" did not deprive defendant of fair trial).

■ Petitioner also argues that the prosecutor's summation referred to facts not in evidence. Specifically, petitioner objects to a prosecution argument supporting Montenegro's identification of petitioner as the perpetrator of the robbery and killing. In summation, the prosecutor described human memory of any traumatic event as "like a camera, [which] takes a picture and that picture is stored on the film and that film is memory." Thus, according to the prosecutor, an image of the individuals involved in the November 13, 1980 shooting "was burned on his [Montenegro's] mind...." *Transcript*, at 603.

In this case, the prosecutor's remarks were clearly in the realm of argument, rather than a recitation of facts extrinsic to the record. Indeed, to the extent they could be construed as factual, the judge properly admonished the jury to disregard them, during his charge:

> In making the factual determination on which your verdict will be based, you may consider only the testimony of the witnesses as you have heard it in this courtroom and exhibits received in evidence and the stipulations. Comments, remarks and summation by opposing attorneys are not evidence nor anything I have said with regard to the facts is evidence.

*Transcript*, at 665–66. Such an instruction is sufficient to cure any prejudice that could have resulted from the prosecution's argument. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974); *Payne v. Jones*, 638 F.Supp. 669, 676 (E.D.N.Y. 1986); *Snow v. Reid*, 619 F.Supp. 579, 584 (S.D.N.Y.1985).

The Court need not conclude whether the prosecution's attempt to analogize human memory of traumatic events to the workings of a camera was appropriate. Whatever the propriety of this argument, "the prosecutor's references were not so inflammatory that they deprived the defendant of ... [his] right to a fair trial." *United States v. Hattaway*, 740 F.2d 1419, 1426 (7th Cir.1984).

In short, the Court must reject petitioner's argument that prosecution statements violated his constitutional right to a fair trial.

### D. EXCESSIVE SENTENCE.

As a final argument for habeas relief, petitioner claims that his sentence to two concurrent terms of imprisonment with maximum terms of twenty-five years to life, as well as four other concurrent terms, was excessive and violated his fourteenth amendment due process rights. As an initial matter, petitioner's failure to challenge the constitutionality of his prison term during his sentencing hearing precludes his subsequent constitutional claim of an excessive sentence. *See Rivera v. Quick*, 571 F.Supp. 1247, 1248 n. 2 (S.D.N.Y.1983); *Boyd v. LeFevre*, 519 F.Supp. 629, 637 (E.D.N.Y.1981). However, even if petitioner's excessive sentence claim had been preserved for habeas review, his sentence fails to raise any constitutional issues, since it does not exceed the maximum sentence prescribed under the relevant criminal statute. *Rivera v. Quick*, 571 F.Supp. 1247, 1248–49 (S.D.N.Y.1983); *Reese v. Bara*, 479 F.Supp. 651, 657 (S.D.N.Y.1979); *Warren v. Hogan*, 373 F.Supp. 1241, 1246 (S.D.N.Y. 1974). *See also Fielding v. LeFevre*, 548 F.2d 1102, 1108 (2d Cir.1977); *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984), *cert. denied*, 469 U.S. 1229, 105 S.Ct. 1229, 84 L.Ed.2d 367 (1985). Accordingly, in *Williams v. Smith*, 454 F.Supp. 692, 697 (W.D.N.Y.1978), *aff'd*, 591 F.2d 169 (2d Cir.), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 289 (1979), a federal district court denied a habeas petition challenging a life sentence that fell within statutory limits, despite the petitioner's severe diabetic condition and lack of an extensive prior record.

In the instant case, the state trial judge imposed the maximum sentence authorized under the applicable state criminal statutes of 25 years to life. Petitioner argues that this sentence is excessive, given his lack of a prior criminal record and his relatively youthful age of 22 at the time of his conviction. However, because the sentence, determined after petitioner's conviction on charges arising out of a cold-blooded robbery and murder, falls within the limits set by the relevant state statutes, this Court lacks any basis for questioning its validity. *See* N.Y. Penal Law § 70.00 (McKinney 1975).

### IV. CONCLUSION

Petitioner's various arguments that the conduct of his state court criminal trial violated his federal constitutional rights are rejected. Accordingly, the instant petition for habeas corpus is denied.

SO ORDERED.